IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KULWANT SINGH GADRI,

        Petitioner,                  No. CIV S-10-CV-2826 CHS P

    vs.

GARY SWARTHOUT,

        Respondent.             <u>ORDER</u>

                              /

## 1. INTRODUCTION

Petitioner, Kulwant Singh Gadri, is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently serving an aggregate sentence of 170 years to life plus life with the possibility of parole following his 2008 jury convictions in the San Joaquin County Superior Court for six counts of attempted premeditated murder, with penalty enhancements as to each of the six counts for personal and intentional discharge of a firearm during the commission of the crimes, infliction of great bodily injury, and use of a firearm while committing or attempting to commit a felony. In addition, the jury found Petitioner guilty of a seventh count of attempted premeditated murder, with penalty enhancements as to that count for personal and intentional discharge of a firearm during the commission of that

1

crime and for use of a firearm in the commission of a felony or attempted felony, as well as an eighth count for discharging a firearm from a motor vehicle. Here, Petitioner challenges the constitutionality of his convictions.

## II. CLAIMS

Petitioner presents two grounds for relief. Specifically, the claims are as follow:

(1)   Ineffective assistance of counsel;

(2)   Newly discovered evidence; and

(3)   Cumulative error of a constitutional magnitude.

Based on a thorough review of the record and applicable law, it is recommended that both of Petitioner's claims be denied.

## III. BACKGROUND

The relevant facts of Petitioner's crime were summarized in the unpublished opinion of the California Court of Appeal, Third Appellate District, as follows:

> This case involves a nighttime drive-by shooting of several people in a parking lot of a Stockton restaurant on May 14, 2006.
>
> The story begins earlier that day, at a kabaddi tournament in Stockton. Kabaddi is a rugby-like game, popular with Punjabi and Sikh cultures.
>
> Defendants Pardeep and Kulwant[FN1] attended the tournament, and were seen throughout the day disputing the tournament committee's decision to bar a particular player. Defendant Pardeep confronted Satwinder G. (Also known as "John""), and defendant Kulwant threatened a committee member, Manjit U., over this issue. Satwinder is a longtime kabaddi supporter and an apparent prominent, wealthy member of the Sikh/Punjabi community.
>
>> FN1.   Because many of the people involved in this case share the same last names, for clarity we will use first names.
>
> Later in the day, a physical fight broke out at the tournament. On one side of the scuffle were defendants and two of their friends, Sarwan S., who had a knife, and "Happy," who brandished a gun. After the fight, defendant Pardeep told committee member Manjit that "[w]e're

2

not going to let [Satwinder] take the cup [first-place trophy] today no matter what happens." But that is what happened, as the team sponsored by Satwinder won the tournament. Many of the eyewitnesses to this fight were also eyewitnesses and/or victims in the later shooting, and at least two of these eyewitnesses (Gurdev A. and Belhar R.) actually fought against defendants' faction.

At the tournament, it was announced there would be a post-tournament dinner at the Sansar Restaurant in Stockton. And after that dinner ended around 11:15 p.m., Satwinder, along with eight other people who had been at the tournament, walked out to the restaurant's parking lot. At this point, a slow-moving silver BMW drove by and its front and rear passengers discharged a barrage of gunfire at Satwinder's group.

Four of the people in Satwinder's group - - Satwinder himself, Gurdeep S., Raghbir S., and Belhar R. - - all of whom knew both defendants, positively identified defendants as the shooters. Two others - - Gurdev A. and Gulwinder S. - - identified defendant Kulwant as a shooter.

The defense highlighted inconsistencies between these testimonial identifications and some statements provided to law enforcement. For example, Satwinder initially stated to law enforcement that he did not see what the shooters were wearing, but several hours later described defendant Pardeep's attire; Gurdeep, while being treated at the hospital, did not identify defendants and said he was unable to get a good look at the shooters; Raghbir, while also at the hospital being treated, was unable to describe the vehicle involved though he did so at trial; Belhar told officers at one point he did not know the people who were shooting (language comprehension may have bee an issue here); and Gurdev gave inconsistent statements as to defendant Pardeep being a shooter. Furthermore, Satwinder was close with all of these eyewitnesses. One other individual, Santokh J., who owned the Sansar Restaurant and who was not close with these eyewitnesses, also witnessed the shooting. He was standing near Satwinder, and was shot three times. Although Santokh could not identify the shooters, he heard Satwinder mention the names "Kulwant and Pardeep" right after the bullets flew. Moreover, Santokh had told a police officer that one of the shooters was an Indian male wearing an orange or yellow T-shirt (which matched the description for both defendants).

A "tip" led officers to the silver BMW, and the car was towed to a Department of Justice (DOJ) crime lab on May 16. The car was apparently owned by a friend of defendants and sold about a month after the shooting.[FN2] A DOJ firearms expert and a DOJ fingerprint expert did not obtain from the car any inculpatory evidence within their respective realms, but both experts noted that the car had been

3

recently cleaned thoroughly.

> FN2. The friend was Jasvir G., who was also charged with crimes. These charges, however, were dismissed after the preliminary hearing.

Cell phone records for defendants were introduced. In addition to listing calls made and received, cell phone records can show the approximate location of a cell phone, which links to the nearest cell tower during calls. Defendant Kulwant's records displayed a 7:23 p.m. call on May 14 linked to a tower near the kabaddi tournament, and calls at 10:51 and 10:52 p.m. that night to another tower within a half mile of the Sansar Restaurant (these two tower sites are on opposite sides of Stockton - - Charter Way and near Hammer Lane, respectively). Defendant Pardeep's records showed a flurry of seven calls between his cell phone and one particular phone number between 10:57 p.m. and 11:26 p.m. on May 14. Defendant Pardeep's cell phone received calls from this number again at 11:27, 11:33 and 11:44 p.m. The Sansar Restaurant shooting was first reported in a 911 call at 11:32 p.m.

There was also evidence that defendant Pardeep had changed his appearance after the incident and before his trial - - he shaved his long beard and discarded his turban.

The defense theory was that Satwinder G. is a powerful figure in the Sikh community who wanted defendants blamed for the shooting after they had insulted him at the kabaddi tournament, and that the other witnesses felt obliged to support Satwinder because they knew him well. In support of this defense, defendants, as noted, highlighted some inconsistencies between eyewitness testimony and statements to law enforcement. Additionally, defendant Pardeep offered Sarwan S. as an alibi witness (Sarwan effectively testified he was with Pardeep for most of the May 14 night, but this defense was undercut by Sarwan's additional testimony that he did drop Pardeep off at Pardeep's home earlier that night and by Pardeep's phone records indicating that Pardeep's cell phone called Sarwan's cell phone at 9:02 p.m.). The defense also questioned the lighting conditions at the site of the shooting, and noted that Satwinder had launched his own investigation into the shooting even though he had positively identified defendants as the shooters to police.

In rebuttal, Manjit U. testified that Sarwan S. Came to the Sansar Restaurant after the shooting and told him, "I tried to stop them [i.e., Kulwant, Pardeep and Happy], but they wouldn't stop."

Lodged Doc. 18 at 2-6.

Following a jury trial, Petitioner was convicted of seven counts of attempted

4

premeditated murder, CAL. PENAL CODE §§ 187/664, and one count of discharging a firearm from a motor vehicle, CAL. PENAL CODE § 12034. As to six of the attempted premeditated murder counts, the jury found true penalty enhancements for the discharge of a firearm during the commission of those crimes, CAL. PENAL CODE § 12022.53(d), infliction of great bodily injury while committing or attempting to commit a felony, CAL. PENAL CODE § 12022.7, and the use of a firearm while committing or attempting to commit a felony, CAL. PENAL CODE § 12022.5(a). As to the seventh count of attempted premeditated murder, the jury found true penalty enhancements for discharge of a firearm during the commission of that crime, CAL. PENAL CODE § 12022.53(c), and for use of a firearm in the commission of a felony or attempted felony, CAL. PENAL CODE § 12022.5 (a).

Petitioner was sentenced to life with the possibility of parole on all seven attempted premeditated murder counts. He was sentenced to six consecutive terms of twenty-five years to life with respect to the section 12022.53(d) penalty enhancements, as well as to a consecutive twenty year term with respect to the section 12022.53(c) enhancement. Sentencing was stayed on count eight, discharging a firearm from a motor vehicle, and on all remaining penalty enhancements. Thus, Petitioner received an aggregate sentence of 170 years to life, plus life with the possibility of parole.

Petitioner timely appealed his convictions to the California Court of Appeal, Third Appellate District. Prior to that court's ruling on his appeal, Petitioner also filed a petition for writ of habeas corpus in the San Joaquin County Superior Court. Habeas corpus relief was denied by that court on April 6, 2009. Petitioner filed a motion for reconsideration of the superior court's denial on April 16, 2009. The court denied his motion on May 7, 2009. Petitioner once again sought habeas corpus relief in the San Joaquin County Superior Court and, once again, relief was denied with a short, but reasoned, opinion on July 16, 2009. Petitioner then sought habeas corpus relief in the California Court of Appeal, Third Appellate District. The court denied relief without comment on August 21, 2009. He then petitioned the California Supreme Court for review of the appellate

court's decision, and the petition was denied without comment on November 10, 2009. Petitioner's direct appeal was denied with a reasoned opinion by the state appellate court on March 8, 2010. The pending federal petition for writ of habeas corpus was filed on October 1, 2010. Respondent filed its answer on April 8, 2011, and Petitioner filed his traverse on April 19, 2011. This matter is submitted for decision and both parties have consented to jurisdiction by a United States Magistrate Judge.

## IV. APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

This case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of *habeas corpus* filed after its enactment on April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997). Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 n. 7 (2000). Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See also Penry v. Johnson*, 531 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001). This court looks to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).

## V. DISCUSSION

**A. INEFFECTIVE ASSISTANCE OF COUNSEL**

Petitioner claims that trial counsel rendered prejudicially ineffective assistance by failing to take the steps necessary to secure Amrit Pal as a defense witness at trial. Petitioner argues that had Amrit Pal's testimony would have raised reasonable doubt with regard to whether eyewitnesses had accurately identified Petitioner and Pardeep as the shooters at Sansar Restaurant on the evening of May 14, 2006. According to Petitioner, counsel had a constitutional duty to request the judge who presided over the February 22, 2007 preliminary hearing to order Amrit Pal to be present at the arraignment on the Information which was to take place on June 6, 2007. In addition, Petitioner contends that counsel had a constitutional duty to request a continuance during trial after a warrant had issued for Amrit Pal through his father so that he could be presented as a defense witness.

The Sixth Amendment to the United States Constitution guarantees to a criminal defendant the effective assistance of counsel. A showing of ineffective assistance of counsel has two components. *See Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must demonstrate that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. In assessing an ineffective assistance of counsel claim, "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance,'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689), and that counsel "exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689). As the United States Supreme Court recently emphasized, the question for a federal court conducting habeas corpus review under section 2254(d) "is not whether counsel's actions were reasonable." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review

is 'doubly' so." *Id*. (internal quotations and citations omitted). The determination to be made, therefore, is not whether counsel acted reasonably, but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

The second factor required for a showing of ineffective assistance of counsel is actual prejudice caused by the deficient performance. *Strickland*, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id. See also Williams v. Taylor*, 529 U.S. 362, 391-92 (2000); *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000). Importantly, on collateral review, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (citing *Strickland*, 466 U.S. at 697).

The San Joaquin County Superior Court considered and rejected Petitioner's ineffective assistance of counsel claim on collateral review, explaining as follows:

> In his Petition, Petitioner first alleges ineffective assistance of council [sic] claiming that his court appointed attorney failed "to secure the extremely favorable and exonerating testimony from Amrit Pal Singh." At the time of the shooting, Amrit was a 15 year old boy who was among the group in the parking lot when the gun fire erupted. After the shooting, Amrit gave a statement to the police in which his description of the backseat shooter did not match either Petitioner or [Pardeep]. On November 16, 2006, Amrit reiterated his original statement to the investigator hired by Singh's then attorney. He further told this investigator that he had seen pictures of the two men arrested for the shooting and neither one of them was the man he saw shooting from the backseat of the vehicle.
>
> On February 22, 2207, Amrit maintained his version of the facts during his direct testimony at Petitioner and [Pardeep]'s preliminary hearing. During Amrit's cross-examination at this hearing, the court took a break from proceedings which were set to resume the

8

following day. However, when court resumed the following day, Amrit did not appear; instead, Amrit's aunt and father appeared and informed the court that due to the stress of the situation, Amrit was unable to attend. This led to six (6) continuances for resumption of Amrit's testimony, but he never appeared. On May 22, 2007, the court refused any further continuances, struck Amrit's testimony, and held Petitioner and [Pardeep] to answer to the charges.

On November 14, 2007, at Petitioner and [Pardeep]'s second trial[FN1], pursuant to a motion submitted by [Pardeep]'s counsel, the court entered an Order directing the County Sheriff to serve a defense subpoena on Amrit based on the showing that he was concealing himself to avoid service of subpoena. Pursuant to said Order, on November 20, 2007, a deputy sheriff served a subpoena on Amrit's father for Amrit to appear in court as a witness. Amrit's father failed to appear, and on February 20, 2008, the court issued a bench warrant for his arrest.

> FN1.  Petitioner and [Pardeep]'s first trial ended in a hung jury. Their second trial ended in a mistrial due to a conflict of interest for [Pardeep]'s counsel. The third trial ended in a jury verdict of guilty on all counts.

At Petitioner and [Pardeep]'s third trial, the issue of Amrit's testimony was discussed several times. Petitioner's counsel maintained that Amrit's testimony was crucial to the defense. However, after much discussion and several attempts, Amrit never took the stand.

Accordingly, it is Petitioner's position that his attorney's failure to secure Amrit's testimony and call Amrit as a witness at trial amounts to ineffective assistance of counsel. Petitioner contends that defense counsel was obligated to employ all available legal mechanisms to securer Amrit's testimony. As such, his attorney should have requested at the conclusion of the preliminary hearing that the court order Amrit to appear on the next date set for arraignment, and then continue to request court orders that Amrit appear thereafter to insure that he ultimately appear as a witness to testify at trial. Counsel should also have taken the necessary steps to provide the necessary information to the police and sheriff departments to serve the warrant issued on February 20, 2008. Hence, Petitioner argues that counsel's failure to follow these recognized avenues to insure Amrit testified in trial was not based on any strategic purpose or objective.

Moreover, Petitioner asserts that omission of Amrit's testimony prejudiced Petitioner's defense. The testimony was extremely favorable and exonerating and would have also effectively impeached the reliability and accuracy of eyewitnesses' identification of Petitioner and [Pardeep].

9

> A claim of ineffective assistance of counsel has two components: "'First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' [Citation.] [¶] To establish ineffectiveness, a 'defendant must show that counsel's representation fell below an objective standard of reasonableness.' [Citation.] To estalish prejudice he 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation.]" (*Williams v. Taylor* (2000) 529 U.S. 362, 390-391, 120 S.Ct. 1495, 1511-1512, 146 L.Ed.2d 674; *In re Jones* (1996) 13 Cal.4th 552, 561, 54 Cal.Rptr.2d 52, 917 P.2d 1175.) The ineffectiveness must "deprive the defendant of a substantive or procedural right to which the law entitles him." (*Williams v. Taylor*, *supra*, 529 U.S. at p. 393, 120 S.Ct. at p. 1513, fn. omitted.)

*In re Vargas* (2000) 83 Cal.App.4th 1125, 1132-1133, 100 Cal.Rptr.2d 265.

First, Petitioner claims that his attorney should have requested at the conclusion of the preliminary hearing that the court order Amrit to appear on the next date set for arraignment, and then continue to request court orders that Amrit appear thereafter to insure that he ultimately appear as a witness to testify at trial. However, Petitioner fails to cite any authority stating that this is an objective standard of reasonableness. In fact, if this is what was expected of attorneys, an absurdity could result in that counsel would be required to insure that every witness be ordered to appear at every hearing, even hearings in which no witness testimony will be given. This is a burdensome expectation and counsel's failure to meet this "standard" does not amount to an error so serious that counsel was not functioning as the "counsel" guaranteed Petitioner by the Sixth Amendment. *In re Vargas, supra,* 83 Cal.App.4th at 1132.

Second, the evidence shows that Amrit was only able to observe and describe the shooter in the rear of the vehicle. While Amrit maintained that *this* shooter was neither Petitioner nor [Pardeep], it is imperative that several other witnesses identified Petitioner as the shooter in the front of the car. This was the shooter Amrit did not see. Thus, while Amrit's testimony may exonerate [Pardeep], it does not necessarily do the same for Petitioner. Therefore, petitioner has

10

>failed to show that there is a reasonable probability that Amrit's testimony would have resulted in a different outcome for Petitioner.

Lodged Doc. 5 at 1-3.

The state court's rejection of Petitioner's ineffective assistance of counsel claim was not contrary to or an unreasonable application of clearly established federal law. Petitioner has failed to overcome the significant burden of demonstrating that trial counsel's performance fell below professionally acceptable standards. Indeed, the Ninth Circuit has held that ineffective assistance cannot be demonstrated by counsel's failure to call a witness where, *inter alia*, there was no evidence in the record that the witness would testify. *United States v. Harden*, 846, F.2d 1229, 1231-32 (9th Cir. 1988). Petitioner has not directed the court to any evidence that Amrit Pal would have testified at trial. In fact, the record indicates that Amrit Pal would *not* testify – despite the issuance of a subpoena for his appearance, six continuances granted in order to obtain his presence, and the ultimate issuance of a warrant in an attempt to obtain Amrit Pal's appearance through his father. Thus, under the circumstances of this case, and for the reasons expressed by the state court, it appears that trial counsel satisfied *Strickland's* extremely deferential standard. Petitioner is not entitled to federal habeas corpus relief on this claim..

**B. NEWLY DISCOVERED EVIDENCE**

Petitioner claims that he has discovered new evidence that critically undermines the reliability of the prosecution's case against him and "points to" his innocence. It thus appears that Petitioner contends that the newly discovered evidence demonstrates that he stands factually innocent of the crimes for which he was convicted.

The United States Supreme Court has expressly left open the question of whether a claim of actual innocence in a non-capital case is cognizable on federal habeas corpus review. *Dist. Attorney's Office for the Third Judicial Dist. V. Osborne*, 129 S.Ct. 2308, 2321 (2009) (Whether there exists a federal right to be released upon proof of actual innocence is an open question.). In

11

several cases, the Court has assumed, without deciding, that a freestanding claim of actual innocence is cognizable under federal law. *Herrera v. Collins*, 506 U.S. 390, 400 (1993). *See also Jackson v. Calderon*, 211 F.3d 1148, 1165 (9th Cir. 2000) (noting that a majority of the Justices in *Herrera* would have found a freestanding claim of actual innocence); *House v. Bell*, 547 U.S. 518, 554-51 (2006) (declining to resolve whether federal courts may entertain independent claims of actual innocence but concluding that the petitioner's showing of innocence in that case fell short of the threshold suggested in *Herrera*). Likewise, the Ninth Circuit has assumed that claims of actual innocence are cognizable for federal habeas corpus relief and has articulated a minimum standard of proof applicable to such claims. *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997). Accordingly, "a habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Id*. at 476-77 (citing *Herrera*, 506 U.S. at 442-44). In such a case, the petitioner's burden is "extraordinarily high" and requires a demonstration that is "truly persuasive." *Id*. at 476 (quoting *Herrera*, 506 U.S. at 417). *See also Spivey v. Rocha*, 194 F.3d 971, 979 (9th Cir. 1999) (denying federal habeas corpus relief where "the totality of the new evidence [did] not undermine the structure of the prosecution's case"); *Swan v. Peterson*, 6 F.3d 1373, 1384-85 (9th Cir. 1993) (denying habeas corpus relief where newly discovered evidence did not contradict materially the evidence presented at trial, did not demonstrate that States' evidence was false, and was merely equivocal).

        The San Joaquin County Superior Court considered and rejected Petitioner's claim that newly discovered evidence demonstrates his innocence on collateral review, explaining as follows:

> Petitioner's second ground for [ ] granting his petition is the discovery of new evidence. Through investigation, Petitioner's present counsel made contact with three new witnesses. Each new witness would testify that some of the prosecution's witnesses told them that no one saw the shooters and that Petitioner and [Pardeep] were identified as the shooters because of their involvement in the brawl at the Kabadi tournament. Hence, their testimony would

12

> effectively impeach the testimony of all the eyewitnesses the prosecution called to the stand.
>
>> [N]ewly discovered evidence is a basis for relief only if it undermines the prosecution's entire case. It is not sufficient that the evidence might have weakened the prosecution['s] case or presented a more difficult question for the judge or jury. (*In re Hall* (1981) 30 Cal.3d 408, 417 [179 Cal.Rptr. 223, 637 P.2d 690]; *In re Weber* (1974) 11 Cal.3d 703, 724 [114 Cal.Rptr. 429, 523 P.2d 229]; *In re Branch* (1969) 70 Cal.2d 200, 215 [74 Cal.Rptr. 238, 449 P.2d 174].) "[A] criminal judgment may be collaterally attacked on the basis of 'newly discovered' evidence only if the 'new' evidence casts fundamental doubt on the accuracy and reliability of the proceedings. At the guilt phase, such evidence, if credited, must undermine the entire prosecution['s] case and point unerringly to innocence or reduced culpability." (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 12 46 [275 Cal.Rptr. 729, 800 P.2d 1159].)
>
> *In re Clark* (1993) 5 Cal.4th 750, 766, 21 Cal.Rptr.2d 509.
>
> Petitioner's new evidence comes in the form of witnesses who can provide nothing more than hearsay. Were this evidence to be admitted, it would simply impeach the credibility of some of the prosecution's witnesses. This is not enough to point unerringly to Petitioner's innocence. At most, this new evidence would simply weaken the prosecution['s] case or present a more difficult question for the trier of fact. Moreover, Petitioner indicates that the prosecution's entire case rested on the testimony of its eyewitnesses. A review of the trial transcripts reveals that the prosecution also presented evidence of Petitioner and [Pardeep]'s respective cell phone records from the day of the shooting, as well as the cell phone tower records indicating Petitioner's movements throughout the day. Further, the prosecution introduced evidence that Petitioner and [Pardeep]'s friend owned a vehicle identical to the one involved in the shooting. It was also shown that the friend's vehicle was washed and vacuumed prior to the police showing up and then sold a month later. Thus, even if Petitioner's new evidence undermined the testimony of the prosecution's eyewitnesses, it does not undermine the prosecution's entire case.

Lodged Doc. 5 at 3-4.

To the extent that Petitioner asserts an actual innocence claim herein, he is not entitled to federal habeas corpus relief because, as noted above, the United States Supreme Court has expressly left open the question of whether an actual innocence claim based on newly discovered

13

evidence constitutes grounds for relief. Absent federal authority establishing that an actual innocence claim is cognizable for federal habeas corpus review, the state court's rejection of Petitioner's actual innocence claim based on newly discovered evidence cannot be contrary to or an unreasonable application of clearly established federal law. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from the Court regarding the [issue in dispute,] it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" (quoting 28 U.S.C. § 2254(d)(1))); *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." (citation omitted)).

Moreover, even assuming that Petitioner's claim is cognizable on federal habeas corpus review, he is not entitled to relief because the evidence he presents does not affirmatively prove that he is probably innocent of the crimes for which he was convicted. As noted by the state court, Petitioner's newly discovered evidence consists merely of affidavits from witnesses who support their statements with nothing more than hearsay. As the United States Supreme Court has observed, affidavits based on hearsay are particularly suspect because they are not subject to cross-examination or credibility determinations. *Herrera*, 506 U.S. at 417. These affidavits do not establish the requisite probability that, had those witnesses testified at his trial, "it is more likely than not that no reasonable juror would have convicted him . . . ." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Petitioner is thus not entitled to federal habeas corpus relief on the basis of newly discovered evidence.

**C. CUMULATIVE ERROR**

Petitioner contends that the cumulative effect of the errors at trial, discussed above, deprived him of his right to due process and rendered his trial fundamentally unfair.

In some cases, the combined effect of multiple trial errors may give rise to a due

process violation if the trial was rendered fundamentally unfair, even where each alleged error considered individually would not require reversal. *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (citing *Donnelly v. Dechristoforo*, 416 U.S. 637, 643 (1974); *Chambers v. Mississippi*, 410 U.S. 284, 290 (1973)).  The fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense "far less persuasive," *Chambers*, 410 U.S. at 294, and thereby had a "substantial and injurious effect or influence" on the jury's verdict. *Parle*, 505 F.3d at 927 (quoting *Brecht*, 507 U.S. at 637).

"[C]umulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors." *United States v. Rivera*, 900 F.2d 1462, 1471 (9th Cir. 1990).  As discussed above, Petitioner has suffered no errors of a federal constitutional magnitude.  Thus, there is no combined effect of errors to be reviewed.  Petitioner is not entitled to federal habeas corpus relief on this claim.

## VI. CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is hereby DENIED. If Petitioner wishes to appeal this decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c); FED. R. APP. P. 22(b).  A certificate of appealability may issue under 28 U.S.C. § 2253 "if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The certificate of appealability must "indicate which specific issue or issues satisfy" the requirement.  28 U.S.C. § 2253(c)(3).  A certificate of appealability should be granted for any issue that Petitioner can demonstrate is "'debatable among jurists of reason,'" could be resolved differently by a different court, or is "'adequate to deserve encouragement to proceed further.'" *Jennings v. Woodford*, 290 F.3d 1006, 1010 (9th Cir. 2002) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).  In this case, Petitioner failed to make a substantial showing with respect to any of the claims presented.  A certificate of appealability is therefore DENIED.  *See* 28 U.S.C. §

15

2253(c)(2).

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's October 1, 2010 petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied; and

2. A certificate of appealability shall not issue.

DATED: March 8, 2012

*Charlene H. Sorrentino*
CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE

16